IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

M.D. ALBERT L. BLUMBERG, et al.,          *

     Plaintiffs,          *

v.          *          Civil Action No. GLR-22-2531

CRYSTAL RONEY, et al.,          *

     Defendants.          *

                                        *
                                      ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Home Mortgage Alliance Corporation's ("HMAC") Motion for Summary Judgment (ECF No. 54); Plaintiffs Albert L. Blumberg and Beth P. Blumberg's Motion for Partial Summary Judgment (ECF No. 55); and the Blumbergs' Renewed Motion Requesting Ruling on Motion for Partial Summary Judgment (ECF No. 69). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will deny HMAC's Motion for Summary Judgment (ECF No. 54), grant in part and deny in part the Blumbergs' Motion for Partial Summary Judgment (ECF No. 55), and deny as moot the Blumbergs' Renewed Motion Requesting Ruling on Motion for Partial Summary Judgment (ECF No. 69).

## I.    BACKGROUND[1]

### A.    **Factual Background**

The Court previously summarized the relevant facts in its September 5, 2023 Letter

Order:

> This matter arises from the sale of Plaintiffs Albert L.
> Blumberg and Beth P. Blumberg's home at 8 Jenny Lane,
> Pikesville, Maryland ("the Property"). (See Compl. ¶ 6, ECF
> No. 1). On April 8, 2022, [self-represented] Defendant Crystal
> Roney submitted an offer to buy the Property for $770,000.
> (Id.). On April 12, 2022, the Blumbergs accepted her offer by
> executing the proposed Contract. (Id.). Under the Contract,
> Roney's obligation to purchase the Property was contingent on
> her being able to secure a mortgage loan. (Id. ¶ 8). The Contract
> also required Roney to apply for financing within five days of
> the Contract's execution and that she receive financing within
> fifteen days of the Contract's execution. (Id.).
>
> Roney had also submitted to the Blumbergs a
> Prequalification Letter from HMAC stating "that she had
> already prequalified for the loan" and implying that HMAC
> "had already conducted a credit check and other verification
> procedures." (Id. ¶ 7). The Blumbergs understood the
> Prequalification Letter to be a representation that HMAC had
> reviewed Roney's credit and confirmed that Roney was likely
> to qualify for a mortgage loan. (Id.). If HMAC had not made
> this representation, the Blumbergs would not have entered into
> the Contract. (Id. ¶ 25).
>
> The Blumbergs allege that Roney did not apply for
> financing within five days as required. (Id. ¶ 9). Further, Roney
> could not obtain financing because she had undergone a
> foreclosure in Florida that was still on her credit record. (Id.
> ¶ 22). HMAC knew this as early as April 26, 2022, but
> nevertheless its agent, Nubia Rocha, reassured the Blumbergs
> and their real estate broker, Barry Nabozny, that "although

---

[1] Unless otherwise noted, the facts outlined here are set forth in the Blumbergs'
Complaint (ECF No. 1). To the extent the Court discusses facts that the Blumbergs do not
allege in their Complaint, they are uncontroverted and the Court views them in the light
most favorable to the non-moving party. The Court may address additional facts when
discussing applicable law.

there were some issues with the financing, those issues would be resolved, and the loan would be made." (Id. ¶ 11). As a result of these assurances, the Blumbergs agreed to make repairs to the Property before the scheduled closing on May 17, 2022. (Id. ¶ 12). Neither Roney nor HMAC informed the Blumbergs that Roney could not get a loan and could not go to closing prior to closing day. (Id. ¶ 11). The Blumbergs allege that HMAC "lied to [] Nabozny in the hopes of resolving the credit issue prior to closing" and that it did so with "fraudulent intention" (Id. ¶¶ 14, 22).

On May 12, 2022, Rocha requested closing disclosures from the Blumbergs' title company, and she sent those disclosures to Roney on May 14, 2022. (Id. ¶ 13). On closing day on May 17, 2022, Rocha emailed Nobozny [sic] to inform him that "[w]e are not yet clear to close this morning. Not because of any issues other than that the file is in line with UW to clear. I will keep you posted this morning." (Id. ¶ 14). This was a false statement, and HMAC knew or should have known that Roney could not proceed to closing. (Id.).

Indeed, Roney did not go to closing and did not purchase the Property. (Id. ¶ 17). The Blumbergs sent her a Termination Notice so that they could re-list it. (Id. ¶ 18). On June 10, 2022, Roney attempted to invoke the Contract's financing contingency by presenting a Denial of Credit Notice from HMAC. (Id. ¶ 19). The Notice showed that, contrary to the representations in the Prequalification Letter, a credit report had not been requested until May 3, 2022, and it stated that the loan could not be made due to "serious other delinquencies." (Id. ¶ 20). Additionally, the Notice stated that Roney had requested a loan in excess of the amount set by the Contract. (Id. ¶ 21). Thus, Roney "never attempted to comply with the terms of the Contract as to the loan amount and her purported mortgage loan application was contrary to and constituted a breach of the Contract." (Id.).

The Blumbergs later sold the Property to a different buyer for $690,000 because the market had declined. (Id. ¶ 23). Had HMAC and Roney been honest about her finances, the Blumbergs would have terminated the Contract and relisted the Property sooner. (Id. ¶ 25).

(Sept. 5, 2023 Letter Order at 1–2, ECF No. 36).[2]

**B.    Procedural History**

On October 4, 2022, the Blumbergs filed a Complaint alleging: breach of contract against Roney (Count I); fraud in the inducement against Roney and HMAC (Count II); fraud in performance of contract against Roney and HMAC (Count III); and, in the alternative, negligent misrepresentation against Roney and HMAC (Count IV). (Id. ¶¶ 27−50). The Blumbergs seek monetary damages. (Id. at 12). On January 9, 2023, Roney filed a Motion to Dismiss or Quash the Complaint for Insufficient Service. (ECF No. 18). The Court denied the Motion on January 10, 2023. (ECF No. 22). On January 24, 2023, Roney filed an Answer and Counterclaim against the Blumbergs for breach of contract. (ECF No. 26). The Blumbergs answered the Counterclaim on February 20, 2023. (ECF No. 33). On February 17, 2023, HMAC filed a Motion to Dismiss (ECF No. 31). The Blumbergs filed an Opposition on March 3, 2023, (ECF No. 34), and HMAC filed a Reply on March 10, 2023 (ECF No. 35).

On September 5, 2023, the Court issued a Letter Order granting in part and denying in part HMAC's Motion to Dismiss. (Sept. 5, 2023 Letter Order at 2). Specifically, the Court granted the Motion as to the claim for negligent misrepresentation and denied the Motion in all other respects. (Id.). HMAC answered the surviving claims on September 18, 2023. (ECF No. 37).

---

[2] Citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

After engaging in discovery, HMAC filed the instant Motion for Summary Judgment on April 30, 2024. (ECF No. 54). The Blumbergs filed their Opposition on May 28, 2024, (ECF No. 61), and HMAC filed its Reply on June 13, 2024, (ECF No. 65).

The Blumbergs also filed the instant Motion for Partial Summary Judgment on April 30, 2024. (ECF No. 55). On July 19, 2024, the Blumbergs moved for a ruling on their Motion, (ECF No. 66), which the Court denied on July 23, 2024, (ECF No. 67). The Blumbergs renewed their Motion for a ruling on August 23, 2024. (ECF No. 69).[3] On September 24, 2024, Roney filed her Opposition to the Blumbergs' Motion for Partial Summary Judgment and included supplemental attachments. (ECF Nos. 73–74). The Blumbergs filed a Reply on October 7, 2024. (ECF No. 75). Roney filed a Surreply on November 13, 2024, which the Court considers in its analysis below. (ECF No. 76).[4]

---

[3] Because this Opinion constitutes a ruling on the Blumbergs' Partial Motion for Summary Judgment, the renewed Motion for ruling will be denied as moot.

[4] Though surreplies are generally not permitted, see Local Rule 105.2(a), the Court in its discretion may allow a party to file a surreply. EEOC v. Freeman, 961 F.Supp.2d 783, 801 (D.Md. 2013), aff'd in part, 778 F.3d 463 (4th Cir. 2015). This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs. See Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003), aff'd, 85 F.App'x 960 (4th Cir. 2004). Courts have also used this discretion to permit self-represented parties to file surreplies even where no new matters were raised in the reply brief. See Williams v. Bartee, No. CCB-10-935, 2011 WL 2842367, at *2 (D.Md. July 14, 2011) (permitting pro se party to file surreply that does not address new material but also does not "unduly prejudice defendants"), aff'd sub nom. Williams v. Merritt, 469 F.App'x 270 (4th Cir. 2012). The Court will consider Roney's Surreply due to her self-represented status. Further, the Court finds that because the arguments contained in her Surreply do not change the outcome of its analysis below, Plaintiffs will not be unduly prejudiced by them.

## II.    DISCUSSION

**A.    <u>Standard of Review</u>**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009) (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.Proc. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.Proc. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." <u>Othentec Ltd. v. Phelan</u>, 526 F.3d 135, 141 (4th Cir. 2008) (quoting <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>JKC Holding Co. v. Wash. Sports Ventures, Inc.</u>, 264 F.3d 459, 465 (4th Cir. 2001) (citing <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248; <u>accord</u> <u>Hooven-Lewis</u>, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. <u>Anderson</u>, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986) (quoting <u>Anderson</u>, 477 U.S. at 247).

**B.     <u>Analysis</u>**

**1.     HMAC's Motion for Summary Judgment**

In Counts II and III of the Complaint, the Blumbergs allege fraud in the inducement and fraud in the performance of the contract against Roney and HMAC. (Compl. ¶¶ 31–43). HMAC argues that it is entitled to judgment as a matter of law on these Counts because it made no material misrepresentations to the Blumbergs and the Blumbergs did not suffer any compensable injury as a result of HMAC's alleged acts. (HMAC's Mem. Supp. Mot.

Summ. J. ["HMAC Mot."] at 4, ECF No. 54-27). At bottom, the Court finds that there are disputes of material fact as to the Blumbergs' fraud claims and will deny HMAC's Motion for Summary Judgment.

In Maryland, the common law fraud elements are:

> (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.

Brooks v. Mortg. Invs. Corp., No. WDQ-13-1566, 2014 WL 105477, at *5 (D.Md. Jan. 8, 2014) (citing Hoffman v. Stamper, 867 A.2d 276, 292 (Md. 2005)).[5] Proof of fraud must be "clear and convincing and such as will appeal strongly to the conscience of the court." Finch v. Hughes Aircraft Co., 469 A.2d 867, 887 (Md.Ct.Spec.App. 1984) (quoting Peurifoy v. Cong. Motors, Inc., 255 A.2d 332, 340 (Md. 1969)).[6]

---

[5] HMAC has noted, and the Blumbergs agree, that the elements for common law fraud also apply to fraud in the inducement and fraud in the performance. (See HMAC's Mem. Supp. Mot. Summ. J. at 10–11, ECF No. 54-27; Blumbergs' Opp'n Mot. Summ. J. at 12, ECF No. 61). As such, although the Blumbergs plead these as two separate causes of action, the Court will complete a singular analysis for both Counts because the claims rely on the same set of facts and same legal foundation. Carroll Co. v. Sherwin-Williams Co., 848 F.Supp.2d 557, 566 n.8 (D.Md. 2012); see Sass v. Andrew, 832 A.2d 247, 261 (Md.Ct.Spec.App. 2003) ("[F]raud in the inducement is a subspecies of fraud."); Glover v. EQT Corp., No. JPB-19-223, 2023 WL 5333798, at *4 (N.D.W.Va. Aug. 1, 2023) (finding no reason to draw a distinction between fraud in the inducement and fraud in the performance).

[6] Effective December 14, 2022, the Court of Special Appeals of Maryland was renamed the Appellate Court of Maryland.

Here, HMAC contends that the Blumbergs cannot meet their evidentiary burden with respect to their fraud claims. (HMAC Mot. at 11, 14). The Court disagrees. The Blumbergs have provided sufficient evidence to create a genuine dispute of material fact as to whether HMAC made false representations with respect to Roney's loan status. For example, HMAC argues that "at no point during the entire loan process did [it] or its agents know that Defendant Roney could not obtain a loan." (Id. at 13). But the Blumbergs put forth a "Credit Denial form" issued by HMAC and mailed to Roney shortly before the parties' scheduled closing date, which indicates that Roney's loan application was declined for: "delinquent credit obligations," and an inability to verify Roney's income, among other things. (May 16, 2022 Stmnt Credit Denial at 1–2, ECF No. 62; Blumbergs' Opp'n Mot. Summ. J. at 13, ECF No. 61). HMAC curiously declines to offer an explanation as to why the May 16 Credit Denial did not raise any issues as to Roney's eligibility to obtain a loan. (See Rocha's 2nd Decl. ¶¶ 4–6, ECF No. 65-1). Further, the Blumbergs offer an affidavit from their real estate broker, Barry Nabozny, who states that after the sale failed, HMAC sales manager, Nubia Rocha, later informed him "that [Roney's] loan had never been approved but had been previously denied, that she knew there were problems with the file . . . and that she had been trying to fix those problems prior to the closing deadline." (Nabozny 2nd Aff. ¶ 17, ECF No. 61-1) (emphasis added). Construing these facts in the light most favorable to the Blumbergs, as this Court must, Ricci, 557 U.S. at 586, the Court finds that a reasonable jury could conclude that HMAC made false representations regarding Roney's loan application. Therefore, because there is a genuine issue of material

fact regarding HMAC's representations, summary judgment is not appropriate for either of the fraud claims (Counts II and III). Accordingly, the Court will deny HMAC's Motion.

### 2.    Blumbergs' Motion for Partial Summary Judgment

The Blumbergs move for partial summary judgment as to: (1) their breach of contract claim against Roney (Count I); (2) the issue of damages; and (3) Roney's counterclaim for the return of her Earnest Money Deposit. (Blumbergs' Mot. Summ. J. at 1, ECF No. 55). The Court addresses each argument in turn.

### a.    Breach of Contract Claim

The Blumbergs move for summary judgment as to their breach of contract claim (Count I) against Roney primarily on the grounds that she failed to close the real estate transaction by the date specified in the parties' agreement. (See Blumbergs' Mem. Supp. Mot. Summ. J. ["Blumberg Mot."] at 16, ECF No. 55-1). At bottom, the Court concludes that there is no dispute of material fact as to whether Roney breached the contract and will grant the Blumbergs' Motion as to Count I.

In Maryland, courts follow "the law of objective contract interpretation, which provides that the written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding." Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co., 73 A.3d 224, 232 (Md. 2013) (internal quotation marks and citations omitted). Thus, "a contract's unambiguous language will not give way to what the parties thought the contract

meant or intended it to mean at the time of execution." Id. A court must therefore seek to "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." Id.

When interpreting contract language, "the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." Sy-Lene of Wash., Inc. v. Starwood Urb. Retail II, LLC, 829 A.2d 540, 546 (Md. 2003). "[T]he contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." Dumbarton, 73 A.3d at 232–33 (quoting Sagner v. Glenangus Farms, Inc., 198 A.2d 277, 283 (Md. 1964)) (internal quotation marks omitted).

"A breach of a contract occurs when a party fails to complete the performance of obligations that the contract contemplates." Bank of Am., N.A. v. Jill P. Mitchell Living Tr., 822 F.Supp.2d 505, 523–24 (D.Md. 2011); see also Black's Law Dictionary (12th ed. 2024) (defining breach of contract as a "[v]iolation of a contractual obligation by failing to perform one's own promise . . .").

Here, the Court agrees with the Blumbergs that Roney's failure to close on May 19, 2022, as the parties mutually agreed, (see Settlement Extension Addendum at 1, ECF No. 56-2), constitutes breach of contract. (See Blumberg Mot. at 8, 16). It is undisputed that the parties entered into a contract for the sale of 8 Jenny Lane, Pikesville, MD 21208, and that settlement was originally to take place no later than May 17, 2022. (Residential Contract of Sales ["Roney Contract"] at 1, ECF No. 56). It is also undisputed that on May

18, 2022, the parties executed a Settlement Extension Addendum which delayed closing until May 19, 2022. (Blumberg Mot. at 7; Settlement Extension Addendum at 1). However, on May 19, 2022, Roney did not close the loan as the parties agreed. (Roney Opp'n Mot. Summ. J. ["Roney Opp'n"] at 3, ECF No. 73; Blumberg Mot. at 8). Instead, she requested an additional ten-day extension, which the Blumbergs refused. (See id. at 8–9). Roney appears to argue that the Blumbergs cannot hold her liable for their refusal to accept her extension request because any losses they incurred were a result of their own impatience with the loan approval process. (Roney Opp'n at 5–6). This argument, however, is misplaced. The sales contract provides that: "Time is of the essence" and that the "failure of Seller or Buyer to perform any act as provided in this Contract by a prescribed date or within a prescribed time period shall be a default under this Contract." (Roney Contract at 1). "Buyer and Seller are required and agree to make full settlement in accordance with the terms of this Contract and acknowledge that failure to do so constitutes a breach thereof." (Id. ¶ 34); see Granados v. Nadel, 104 A.3d 921, 925 n.5 (Md.Ct.Spec.App. 2014) ("'Time is of the essence' is a term of art in contract law requiring strict adherence to the time designated for performance."). There is no genuine issue of material fact as to whether Roney breached the parties' agreement because the record undisputedly reflects that she failed to close the real estate transaction by May 19, 2022, as required by contract. See Chaplick v. Mao, 215 F.Supp.3d 470, 485 (D.Md. 2016) (finding that failure to close loan

by settlement date constitutes breach of contract). Accordingly, the Court grants the Blumbergs' Motion for Summary Judgment as to Count I against Roney.[7]

### b.    Expectation Damages

The Blumbergs also seek summary judgment as to damages. (Blumberg Mot. at 17, 19–20). Because the Blumbergs have established that Roney breached the contract by failing to close the transaction, they are entitled to damages. See Burson v. Simard, 35 A.3d 1154, 1159 (Md. 2012) (explaining that when a purchaser fails to comply with the terms of sale by settlement the seller is entitled to damages). The Blumbergs maintain that the proper measure of damages is expectation damages in the amount of $75,681.14, which is the difference between the net proceeds from their contract with Roney and their eventual contract of sale. (Blumberg Mot. at 17, 19–20). At bottom, the Court finds that there is a dispute of material fact as to the Blumbergs' means of establishing damages and will deny the Motion accordingly.

Expectation damages provide the Blumbergs with the "benefit of their bargain" by putting them in the position they would have been in had the contract been performed. Seton v. United Gold Network, LLC, No. DKC-06-1246, 2008 WL 1925180, at *4 (D.Md. Apr. 30, 2008); see Restatement (Second) of Contracts § 347 (1981). They "are not only the most accurate means of measuring loss following a breach of contract, but also the most

---

[7] Roney also makes bald assertions that the Blumbergs: (1) lack standing to bring their Motion for Summary Judgment; (2) fail to state a cause of action; and (3) are barred from seeking relief by equitable doctrines of waiver, laches, unclean hands, and estoppel. (Roney Opp'n Mot. Summ. J. at 8–10, ECF No. 73). However, because Roney does not allege any facts to support these arguments, the Court does not find that a genuine dispute of material fact exists as to these issues, nor that they are legally sound.

common measure of recovery granted." Seton, 2008 WL 1925180, at *4. To recover expectation damages, losses must be reasonably certain and foreseeable; losses that are speculative, hypothetical, remote, or contingent either in eventuality or amount are not recoverable. See Nat. Prod. Sol., LLC v. Vitaquest Int'l LLC, No. CCB-13-436, 2014 WL 6383482, at *6 (D.Md. Nov. 13, 2014) (quoting Asibem Asso. v. Rill, 286 A.2d 160, 162 (Md. 1972)); Hoang v. Hewitt Ave. Assocs., LLC, 936 A.2d 915, 934 (Md.Ct.Spec.App. 2007) ("In a breach of contract action . . . the non-breaching party may recover damages for . . . [losses] that were reasonably foreseeable, and . . . proven with reasonable certainty.").

When a buyer breaches a contract to purchase real estate, Maryland courts have awarded the seller "benefit of the bargain" damages based on "the difference between the contract price and the fair market value at the time of breach." Burson, 35 A.3d at 1159 (quoting Kasten Constr. Co., Inc. v. Jolles, 278 A.2d 48, 51 (Md. 1971)). A property's resale price may substitute for the fair market value in establishing damages if: (1) the resale occurs within a reasonable time after the breach; and (2) the resale resembles an arm's length transaction. See Kasten, 278 A.2d at 51 (describing how the resale price cannot be used as a measure of damages where the sale does not resemble an arm's length transaction); see also 14 Powell on Real Property § 81.04 (2024) ("One of the strongest indications of the value of the property is the price obtained on a resale by the seller following the purchaser's breach."); 11 Corbin on Contracts § 60.12 (2024) ("In a falling market, courts have held that it is appropriate to measure damages based on market value at the time of resale.").

Here, the Court finds that a dispute of material fact exists as to whether the Blumbergs' subsequent resale of 8 Jenny Lane resembled an arm's length transaction. An arm's length transaction is a "transaction between two unrelated and unaffiliated parties." Black's Law Dictionary (12th ed. 2024). Where a single real estate broker represents opposing parties in a real estate transaction, Maryland courts have recognized that "[i]t is inevitable . . . that the dual agency relationship will cause harm to one, if not both, parties." Wilkens Square, LLLP v. W.C. Pinkard & Co., 984 A.2d 329, 336–37 (Md.Ct.Spec.App. 2009); see also LiquidX Inc. v. Brooklawn Cap., LLC, 254 F.Supp.3d 609, 618 (S.D.N.Y. 2017) (holding that a transaction engineered "from both sides" cannot be at "arm's length.").

The Blumbergs argue that the resale resembled an arm's length transaction because the price offered, $690,000 with no contingencies, was higher than other offers received and thus, "was a reasonable price at the time [the] offer was made and accepted." (Nabozny Aff. ¶ 23; Blumberg Mot. at 18; Aug. 10th Contract at 1). Roney counters, and the Blumbergs do not dispute, that the eventual sale of 8 Jenny Lane was to the Blumbergs' agent, Mr. Nabozny, as part of his "If I don't sell it, I will buy it" guarantee. (Roney Opp'n at 4). In support of her argument, Roney directs the Court to Mr. Nabozny's affidavit in which he concedes that he "assisted the [subsequent] buyers in forming" a limited liability

company under the name of "6 Jenny Lane, LLC,"[8] to purchase the Blumbergs' property, (Nabozny Aff. ¶ 24).

When viewed in the light most favorable to the nonmovant, Roney, the evidence shows that Mr. Nabozny held integral positions on both sides of the transaction; thus, a dispute of material fact exists as to whether the resale of 8 Jenny Lane was an arm's length transaction. See Roso v. Saxon Energy Corp., 758 F.Supp. 164, 169 (S.D.N.Y. 1991) (explaining that a transaction where a party held "integral positions on both sides of the agreement" could not be "considered at arms-length."). Because a dispute of material fact exists as to whether the resale of 8 Jenny Lane resembled an arm's length transaction, and the Blumbergs fail to offer any other evidence of their property's fair market value at breach, the Court cannot grant summary judgment on the measure of damages. Accordingly, the Court will deny the Blumbergs' Motion for Summary Judgment as to expectation damages.

### c.    Roney's Counterclaim

Finally, the Blumbergs move for summary judgment as to Roney's counterclaim. (Blumberg Mot. at 22). In her counterclaim, Roney argues that she is entitled to a return of her Earnest Money Deposit ("deposit") totaling $20,000, for invoking the contract's Financing Contingency, and that the Blumbergs' failure to return the deposit constitutes a material breach of contract. (Countercl. ¶¶ 58, 65, ECF No. 26). At bottom, the Court finds

---

[8] Mr. Nabozny explains that it "was the original intention to call the company, quite logically, '8 Jenny Lane, LLC' but due to typographical error the organizing documents were filed as 6 Jenny Lane, LLC." (Nabozny Aff. ¶ 24, ECF No. 55-2).

that no dispute of material fact exists as to the issue of Roney's deposit and will grant summary judgment in favor the Blumbergs.

Generally, when a buyer of real property offers a deposit on the purchase price, "but fails to fulfill the contract without lawful excuse, [s]he cannot recover the payment if the [sellers are] ready and willing to perform [their] part of the contract, even though the [sellers] may have made a profit by reason of the default." Chas. H. Steffey, Inc. v. Derr, 338 A.2d 262, 265 (Md. 1975) (quoting Quillen v. Kelley, 140 A.2d 517, 520 (Md. 1958)).

Here, Roney appears to argue that her invocation of the contract's Financing Contingency excuses her breach, and thus, entitles her to a return of her deposit. (See Countercl. ¶¶ 61, 62, 66). The Blumbergs counter that Roney is not entitled to a return of her deposit for two reasons: (1) she breached the contract by failing to close on the property by the agreed upon deadline; and (2) she failed to timely invoke the Financing Contingency. (Blumberg Mot. at 22). The Court agrees with the Blumbergs for the following reasons.

First, as stated, there is no dispute of material fact as to whether Roney breached the parties' contract. See supra II.B.2.a. Second, there is no dispute of material fact as to whether Roney timely invoked the Financing Contingency. The record reflects that Roney only attempted to invoke the contract's Financing Contingency on June 16, 2022, (see Demand Letter, ECF No. 56-5), nearly one month after she had already defaulted on the contract by failing to close by the agreed upon deadline, (see Email from Barry Nabozny, Blumbergs' agent to Randi Caplin, Roney's agent, May 19, 2022, 11:58 P.M., ECF No. 56-11; Settlement Extension Addendum at 1; Blumberg Mot. at 7, 14). Under the terms of

the parties' contract, Roney had fifteen days from the date of contract acceptance to obtain a written financial commitment. (<u>See</u> Roney Contract ¶ 10). If Roney was unable to obtain a mortgage commitment within this timeframe, the contingency authorized her to "declare th[e] [c]ontract null and void and of no further legal effect," "upon written notice" to the Blumbergs. (<u>Id.</u> ¶¶ 9–10). Because the evidence shows that Roney did not provide written notice of her inability to obtain a mortgage commitment until more than fifteen days after the date of contract acceptance,[9] there is no dispute of material fact that her invocation of the Financing Contingency was untimely. Therefore, the Court finds that she is not entitled to invoke the contingency and recover her deposit in the amount of $20,000.00. 77 Am.Jur.2d Vendor and Purchaser § 531 (explaining that a purchaser waives the terms of a financing contingency by failing to give timely notice of an inability to obtain a mortgage commitment and is not entitled to recover his or her down payment); <u>see also</u> <u>Mitchell v. Tilton</u>, 2001 Mass.App.Div. 13, No. MCC-1328, 2001 WL 92298, at *3–4 (Mass.Dist.Ct. Jan. 30, 2001) (finding that sellers of real property were entitled to retain the buyer's deposit because the purchaser failed to give the sellers timely written notice of the purchaser's inability to secure a mortgage, as required under the mortgage contingency clause). Accordingly, the Court grants the Blumbergs' Motion for Summary Judgment as to Roney's counterclaim.

---

[9] Roney argues that the contract was accepted on April 25, 2022, (Roney Opp'n at 7), while the Blumbergs argue that the contract was accepted on April 12, 2022, (Blumberg Mot. at 14). Regardless, the record reflects that Roney did not attempt to invoke the financing contingency until June 16, 2022, (Demand Letter, ECF No. 56-5), more than fifteen days after either date. Thus, the Court finds her attempt untimely.

### III.    CONCLUSION

For the foregoing reasons, the Court denies HMAC's Motion for Summary Judgment (ECF No. 54), and grants in part and denies in part the Blumbergs' Motion for Partial Summary Judgment (ECF No. 55). A separate Order follows.

Entered this 23rd day of January, 2025.

_____/s/_____

George L. Russell, III
Chief United States District Judge